<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IRON BAR, LLC, et al.,** | |
| *Plaintiffs*, | |
| **v.** | **Civil Action No. 19-9170** |
| **TIMOTHY DOUGHERTY, et al.,** | **OPINION** |
| *Defendants*. | |

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court on Defendants Timothy Dougherty's ("Dougherty"), Stefan Armington's ("Armington"), and the Town of Morristown, New Jersey's ("Morristown" or the "Town," and together with Dougherty and Armington, "Defendants") Motion to Dismiss the Second Amended Complaint, ECF No. 50.  Plaintiffs 5-7 South Street Holdings, LLC ("5-7 SSH"), 9 South Street Holdings, LLC ("9 SSH"), 11 South Street Holdings, LLC ("11 SSH" and, together with 5-7 SSH and 9 SSH, the "SSH Entities"), and Iron Bar, LLC d/b/a Iron Bar, Revolution Social Brew House, and Gran Cantina ("IB LLC" and, together with the SSH Entities, "Plaintiffs") oppose the Motion.  ECF No. 52.  For the reasons explained below, the motion is **GRANTED in part** and **DENIED in part**.

I.    FACTUAL BACKGROUND[1]

This matter arises from an alleged campaign of harassment by Morristown, its Mayor, and a town councilman against a business operating two restaurants and bars in Morristown.

---

[1] These facts are drawn from the Second Amended Complaint, ECF No. 44 ("SAC").

IB LLC is a limited liability company with its principal place of business at 5 South Street in Morristown.  SAC ¶ 8.  IB LLC operates two bars and restaurants in adjacent premises on South Street: Iron Bar and Revolution Social Brew House ("Revolution").  Id.  IB LLC also unsuccessfully attempted to open a third bar in adjacent premises, Gran Cantina.  Id. ¶¶ 76-92.  The SSH Entities hold or held property interests in the premises where IB LLC operated.[2]  James Cavanaugh ("Cavanaugh") is the principal of each plaintiff LLC.  Id. ¶ 12.

Dougherty has served as the elected Mayor of Morristown since January 1, 2010.  Id. ¶¶ 13, 24.  Armington is a member of the Town Council and served as President of the council during the relevant period.  Id. ¶ 14.  The Council doubles as the Town's Alcoholic Beverage Control Board (the "ABC Board"), and Armington served as president of that body as well.  Id. ¶ 35.

The origin of this dispute dates to 2010, when Cavanaugh first developed the concept for Iron Bar and began renovating its premises.  Id. ¶¶ 21-23.  Previously, Cavanaugh had been a personal friend and political supporter of Dougherty.  Id. ¶ 29.  When Dougherty became aware of Cavanaugh's plans for Iron Bar, he demanded that he be included as an silent investor in Iron Bar through his son.  Id. ¶¶ 30-31.  Cavanaugh refused the offer, "and Dougherty thereafter harbored intense animus toward both Cavanaugh personally and [his] businesses."  Id. ¶ 32.  Separately, Armington harbored longstanding animus against Cavanaugh due to an unrelated development proposal put forth by Cavanaugh.  Id. ¶ 36.  Plaintiffs allege that Dougherty and Armington, motivated by personal animus against Cavanaugh, repeatedly used the power of the Morristown government to harass Plaintiffs and diminish their business.

---

[2] 5-7 SSH holds fee simple title to Iron Bar's premises at 5-7 South Street and Revolution's premises at 9 South Street. SAC ¶ 9.  9 SSH previously held a leasehold interest in 9 South Street.  Id. ¶ 10.  11 SSH previously held a leasehold interest in Gran Cantina's proposed premises at 11 South Street.  Id. ¶ 11.

### A.      Plaintiffs' First Amendment Activities

Plaintiffs contend that Defendants retaliated against them for three distinct activities protected by the First Amendment.

First, Plaintiffs allege that through Cavanaugh, they dissociated from Dougherty by declining to provide him political support.  Due to the breakdown of the parties' relationships, Cavanaugh withdrew his support for Dougherty's campaigns, which included hosting campaign events at Iron Bar.  Id. ¶ 37.

Second, in October 2016, the SSH Entities sued the Morristown Parking Authority ("MPA") claiming that the MPA was overburdening an easement on their property (the "State Litigation").  Id. ¶ 131 & Ex. 5.  This caused Defendants to "repeatedly express[] rage at Plaintiffs," including statements by Dougherty to Cavanaugh: "You fucked with the wrong people" and "Remember that saying you kept telling me all those years ago, that you can't fight city hall? Have you learned that yet?"  Id. ¶¶ 134, 137.  Relatedly, during a hearing regarding IB LLC's liquor license, nonparty councilwoman Allison Deep allegedly said, "Why should we give you anything? You're suing the town."  Id. ¶ 135.

Third, Plaintiff alleges that IB LLC was forced to initiate administrative proceedings to challenge restrictions that the ABC Board imposed on its liquor license.[3]  After a 2015 renovation to Revolution's proposed space, IB LLC applied to expand its liquor license to cover Revolution. Id. ¶¶ 42, 45.  Morristown's ABC approved the transfer on June 28, 2016, but required Revolution to stop serving alcohol at 11:00 p.m. Sunday through Thursday and 11:30 p.m. Friday and

---

[3] Plaintiff contends that IB LLC's appeals of the licensing restrictions were protected under the Petition Clause, while the restrictions themselves were an act of retaliation by Defendants for other protected activities.  The Complaint alleges that Dougherty enlisted the support of Armington to use his authority as president of the ABC Board to achieve this retaliatory objective.  Id. ¶¶ 34-36.

Saturday.  Id. ¶ 46 & Ex. 1, at 2.  A town ordinance generally permits licensed establishments to serve alcohol until 2:00 a.m. and no other Morristown establishment with a liquor license was required to cease service prior to 2:00 a.m.  Id. ¶¶ 44, 47, 64.  While the Town expressed "concerns regarding additional bar patrons in the downtown neighborhood," it placed no similar service restrictions on two other neighboring bars when permitting them to expand their licensed premises.  Id. ¶¶ 51-53.

On June 29, 2016, IB LLC challenged the restrictions in administrative proceedings before the New Jersey Division of Alcoholic Beverage Control ("NJDABC").  Id. ¶ 57 & Ex. 1, at 2.  On February 23, 2018, after an evidentiary hearing, a New Jersey Office of Administrative Law Judge ("ALJ") held that the restrictions were unreasonable and an inappropriate exercise of the Town's discretion.  Id. ¶ 59 & Ex. 1, at 15.  During the hearing, both Armington and Morristown's chief of police stated that they did not know why the restrictions were placed on Revolution.  Id. ¶¶ 63, 65.  Morristown appealed the NJDBAC's determination to the New Jersey Superior Court, Appellate Division, which affirmed the ruling on July 19, 2019.  Id. ¶ 69 & Ex. 3.  Plaintiffs allege that notwithstanding the favorable ruling, the Town imposed the same restrictions on Revolution at its most recent renewal hearing without justification, despite IB LLC's counsel specific request for an explanation.  Id. ¶ 72.

Separately, in 2016, Cavanaugh decided to open a Mexican-style restaurant and bar called Gran Cantina in the storefront next to Revolution.  Id. ¶¶ 76-79.  However, the Town denied IB LLC's application to expand its liquor license to cover these premises, citing concerns with additional bar patrons visiting the area.  Id. ¶¶ 81, 86.  Prior to the hearing, Dougherty allegedly "boasted" to 11 SSH's landlord that "there was no chance the [liquor license] application would

be granted." Id. ¶ 82.  IB LLC initially appealed this determination as well but later abandoned the appeal due to its costs.  Id. ¶¶ 90-91.

The ABC Board's decisions to restrict IB LLC's license in both instances were made without receiving any written objection from Morristown's police, fire, building, health, or MPA departments.  Id. ¶¶ 50, 85.  Plaintiffs contend that the Town's restrictions on IB LLC's liquor license were arbitrary, capricious, unreasonable, and motivated by personal animus towards IB LLC and Cavanaugh.  Id. ¶¶ 49, 54, 84, 88.  They further assert that the resulting "cloud" over Revolution's license and outright rejection of Gran Cantina's license has diminished the value of IB LLC, diminished the value of the SSH Entities' property interests, and complicated IB LLC's financing efforts.  Id. ¶¶ 73, 74, 92.

### B.    Retaliatory Roadblocks and Police Harassment

Plaintiffs allege that in addition to the restrictions on IB LLC's liquor license, Defendants have interfered with its business by imposing roadblocks during peak business hours.  From 2017 to the present, the Morristown Police Department ("MPD") has been closing the area of South Street in front of Iron Bar and Revolution during the late evenings of every Thursday, Friday, and Saturday night.  Id. ¶¶ 93-94, 96.  Plaintiffs claim that Dougherty personally ordered the roadblocks to discourage patrons from visiting the businesses, in violation of state law.  Id. ¶¶ 102, 107-13.  They allege that the roadblocks serve no legitimate purpose, are inconsistent with "the manner in which traffic is regulated" in other high-occupancy areas of Morristown, prevent ride-hailing services from accessing the bars, inhibit access by handicapped patrons, and make it appear as though "a catastrophic event" occurred near Plaintiffs' premises.  Id. ¶¶ 97-105.  MPD officers also routinely enter Iron Bar and Revolution to arbitrarily inspect the number of

functioning toilets, despite the fact that neither bar has ever been cited for inoperable toilets.  Id. ¶¶ 124-29.

## II.    PROCEDURAL HISTORY

Plaintiffs initiated this action on April 1, 2019, asserting fourteen causes of action under federal and state law.  See Compl., ECF No. 1.  On January 17, 2020, the Court dismissed the Complaint without prejudice and permitted Plaintiffs to replead certain claims.  ECF No. 27.

Plaintiff filed the SAC on May 5, 2020, asserting thirteen causes of action under 42 U.S.C. § 1983 ("Section 1983") and New Jersey common law: (1) two violations of the Petition Clause of the First Amendment, SAC ¶¶ 139-62; (2) two violations of the Association Clause of the First Amendment, id. ¶¶ 163-82; (3) one violation of the Takings Clause of the Fifth Amendment, id. ¶¶ 183-90; (5) two violations of the Due Process Clause of the Fourteenth Amendment, id. ¶¶ 191-214; (6) two violations of the Equal Protection Clause of the Fourteenth Amendment, id. ¶¶ 215-39; (7) two counts of tortious interference with prospective economic relations, id. ¶¶ 240-51; (8) one count of tortious interference with contract; and (9) one count of common law civil conspiracy, id. ¶¶ 261-69.

Defendants now move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.    LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

## IV.   DISCUSSION

Defendants argue that Plaintiffs have failed to state a claim under any count of the SAC, have failed to properly plead municipal liability under Section 1983, and that Armington's actions are entitled to absolute legislative immunity.  The Court addresses each contention in turn.

### A.   Constitutional Claims

Plaintiffs bring nine constitutional claims under Section 1983.  "[T]o state a claim for relief under [Section] 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law." <u>Hagan v. N.J. State Parole Bd.</u>, No. 18-14063, 2019 WL 157298, at *2 (D.N.J. Jan. 10, 2019).  The Court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000) (quoting <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n. 5 (1998)).  The Court will therefore separately evaluate each constitutional claim.

#### 1.   First Amendment — Petition and Association Clauses (Counts 1-4)

Section 1983 permits a cause of action against state actors who retaliate against a private citizen for exercising the rights protected by the First Amendment, including the rights to "peaceably . . . assemble" and to "petition the government for a redress of grievances."  U.S. Const. amend. I.  "To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege

'(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" <u>Mirabella v. Villard</u>, 853 F.3d 641, 649 (3d Cir. 2017) (quoting <u>Thomas v. Indep. Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006)).  The same elements apply to a claim for retaliation against protected petition or association conduct.  <u>See id.</u> at 650 (Petition Clause claim); <u>Palardy v. Twp. of Millburn</u>, 906 F.3d 76, 81 (3d Cir. 2018) (association claim).

### a.    Protected Activity

Plaintiffs allege they thrice engaged in protected activity by refusing to associate with Dougherty, suing the MPA, and appealing the restrictions on IB LLC's liquor license.  Defendants do not dispute that Plaintiffs' lawsuit and appeal are both activities protected by the Petition Clause.[4]  They argue, however, that Plaintiffs have failed to identify a protected "association."

The freedom to associate "plainly presupposes a freedom not to associate." <u>Boy Scouts of Am. v. Dale</u>, 530 U.S. 640, 647-48 (2000) (citing <u>Roberts v. U.S. Jaycees</u>, 468 U.S. 609, 623 (1984)).  Indeed, "a citizen's right not to support a candidate is every bit as protected as his right to support one." <u>Galli v. N.J. Meadowlands Comm'n</u>, 490 F.3d 265, 272-73 (3d Cir. 2007) (citing <u>Bennis v. Gable</u>, 823 F.2d 723, 731 (3d Cir. 1987)) (quotation marks omitted).  Plaintiffs have sufficiently alleged that, acting through Cavanaugh, they dissociated from Dougherty by, among other things, refusing to allow Dougherty to host campaign events at Iron Bar.  SAC ¶ 37.  Such dissociation is protected by the First Amendment.

---

[4] "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." <u>Borough of Duryea, Pa. v. Guarnieri</u>, 564 U.S. 379, 387 (2011) (citation and quotation marks omitted).

Consequently, all three activities alleged by Plaintiffs are protected by the First Amendment.

### b.      Retaliatory Action

Defendants next assert that Plaintiffs' allegations of retaliation fail to establish a deprivation of constitutional rights.  Whether retaliation would be sufficient to deter a person of ordinary firmness "is generally a question of fact" and not suitable for resolution on a motion for dismiss.  See Thomas, 463 F.3d at 296.  Nonetheless, Defendants argue that the SAC fails to state a claim because Plaintiffs were not, in fact, deterred from petitioning the NJDABC for relief.  This argument fails because the relevant inquiry is "not whether the plaintiff was deterred," but rather "whether the act would deter a person of ordinary firmness."  Mirabella, 853 F.3d at 650 (citation omitted).

Here, the SAC pleads viable retaliatory actions in the form of roadblocks, arbitrary police scrutiny, and arbitrary restrictions on IB LLC's liquor license.  SAC ¶¶ 46, 83, 96, 125.  A determination as to whether these actions would deter a person of ordinary firmness is premature.[5]

### c.      Causation

Defendants also argue that Plaintiffs have failed to plead a causal nexus between Plaintiffs' protected activities and Defendants' retaliatory actions.  Again, the Court disagrees.

At the pleading stage, Plaintiffs must allege a "plausible causal connection" through either (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly

---

[5] Defendants' reliance on Tuccio v. Marconi, 589 F.3d 538 (2d Cir. 2009) is misplaced.  In Tuccio, the Second Circuit affirmed the district court's decision to set aside a jury verdict determining that a town retaliated against a developer by refusing to meet with him in person after he filed suit.  Id. at 541-42.  The court held the town had simply taken the "reasonable precaution" of communicating to a litigation adversary only in writing and did not otherwise prejudice the developer.  Id.  This bears no resemblance whatsoever to the police roadblocks and substantive licensing decisions alleged by Plaintiffs.

retaliatory action;" (2) "a pattern of antagonism coupled with timing to establish a causal link;" or (3) "evidence gleaned from the record as a whole [from which] the trier of the fact should infer causation." Falco v. Zimmer, 767 F. App'x 288, 311 (3d Cir. 2019) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (quotation omitted)).  Counts 1 through 4 each allege a distinct causal nexus, and the Court addresses each in turn.

Count 1 alleges that Defendants imposed roadblocks beginning in 2017 in retaliation for the MPA litigation initiated in 2016 and the liquor license appeal in June 2016.  The alleged retaliation therefore occurred close in time to the protected activities.  The SAC also pleads other facts reflecting causation, including direct statements by Dougherty and other officials expressing displeasure with Plaintiffs' petitioning activity.  See, e.g., SAC ¶¶ 133-37.  Count 1 thus states a plausible causal connection and may proceed.

Count 2 alleges that in retaliation for Plaintiffs' petitioning activities, Defendants interfered with IB LLC's liquor license by imposing restrictions on Revolution's service hours and denying the application to expand the licensed premises to cover Gran Cantina.  Manifestly, Defendants' adverse decisions concerning IB LLC's liquor license could not have been retaliation for appeals from those same decisions.  Similarly, the restrictions on Revolution's service hours imposed in June 2016 could not have been retaliation for the MPA litigation, which Plaintiffs filed several months later, in October 2016.  SAC ¶ 130.

Regarding Gran Cantina, while the SAC does not indicate precisely when IB LLC's request for expansion was denied, it alleges that this occurred at some point after Plaintiffs began developing the proposed premises in 2016.  Id. ¶¶ 76-81.  Drawing inferences in Plaintiffs' favor, the SAC plausibly alleges that such denial occurred after certain petitioning activities.  Count 2 may therefore proceed, but only to the extent it alleges that Defendants denied IB LLC's request

to expand its liquor license to cover Gran Cantina in retaliation for the MPA litigation or the appeal from restrictions on Revolution.

Counts 3 and 4 allege that in retaliation for Plaintiffs' disassociation from Dougherty, Defendants ordered arbitrary roadblocks and other police activity (Count 3) and interfered with IB LLC's liquor license (Count 4).  Plaintiffs do not allege when their principal first disassociated from Dougherty, and so the Court cannot evaluate the presence or absence of a "suggestive" temporal proximity.  At this stage in the litigation, however, the Court is satisfied that the SAC pleads the existence of evidence probative of causation, including Dougherty's personal animus towards Cavanaugh, see id. ¶¶ 32-33, 37, and the lack of any plausible, lawful explanation for the roadblocks and liquor license restrictions, see, e.g., id. ¶¶ 63-65, 97-100.  Counts 3 and 4 may proceed.

### 2.    Fifth Amendment — Takings Clause (Count 5)

Defendants next argue that Plaintiffs have failed to state a claim under the Takings Clause of the Fifth Amendment.  The Court agrees.

The Takings Clause prohibits federal, state, and local governments from taking private property "for public use, without just compensation."  U.S. Const. amend. V.  "To succeed on a Takings Claim, the plaintiff[s] must first show that a legally cognizable property interest is affected by the Government's action in question."  Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151-52 (3d Cir. 2018) (citation and quotation marks omitted).  Where, as here, the government has not physically intruded on a plaintiff's property, a non-possessory or regulatory "taking" occurs where the government denies all economically beneficial or productive use of the property.  Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992).  Alternatively, where the government still permits some economically beneficial use, "a taking still may be found based on 'a complex of

factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Murr v. Wisconsin, 137 S. Ct. 1933, 1943 (2017).  The same analysis applies to takings involving licenses. ACRA Turf Club, LLC v. Zanzuccki, 724 F. App'x 102, 110 (3d Cir. 2018) (analyzing off-track wagering licenses).

Plaintiffs allege that Defendants effected a taking by refusing to extend IB LLC's liquor license to cover Gran Cantina.[6]  SAC ¶¶ 185-86.  They contend that Defendants' action impacted two property interests: the liquor license itself and 11 SSH's leasehold interest in the proposed premises for Gran Cantina.  Id. ¶¶ 184, 189.  Neither alleged deprivation of property supports a Takings claim.

First, even assuming that a liquor license is a cognizable property interest for purposes of the Takings Clause, Defendants cannot have "taken" a license covering Gran Cantina because IB LLC never held such a license.  See Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 677 (3d Cir. 1991) (holding that denial of application for dance hall licenses did not constitute taking of licenses because "they were simply not issued"), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).

Second, the refusal to extend the liquor license did not constitute a "taking" of 11 SSH's leasehold interest.  Plaintiffs do not claim that 11 SSH was deprived of all economically beneficial use of the property, but that it was deprived of only one potential use—the sale of alcohol.  Moreover, while Plaintiffs allege that they expended "significant time and resources" in developing Gran Cantina, SAC ¶ 79, any investment-backed expectations for the sale of liquor

---

[6] The SAC does not allege a taking arising out of the police roadblocks or the restrictions imposed on Revolution.

could not have been "reasonable in light of the [Town's] explicit power to regulate" liquor sales. Midnight Sessions, 945 F.2d at 678; see also Pace Res., Inc. v. Shrewsbury Twp., 808 F.2d 1023, 1033 (3d Cir. 1987) ("[I]nvestment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest."). Finally, where a municipality uses its police power to regulate the use of property within its jurisdiction, a taking "occurs only when the regulation has nearly the same effect as the complete destruction of [the property] rights of the owner." Pace Res, 808 F.3d at 1033 (citation and quotation marks omitted). The denial of a liquor license application does not equate to the near destruction of 11 SSH's property rights. Cf. Newark Cab Ass'n, 901 F.3d at 153 ("[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking.").

Count 5 is dismissed with prejudice.

### 3. Fourteenth Amendment — Due Process Clause (Counts 6-7)

Defendants argue that Plaintiffs have failed to allege "conscious shocking" behavior sufficient to state a substantive due process claim arising from Defendants' alleged misuse of the MPD (Count 6) and adverse licensing decisions (Count 7). The Court disagrees.

State actors may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A valid substantive due process claim requires allegations of (1) an interest protected by the substantive due process clause, and (2) the government's deprivation of that protected interest in a manner which "shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). Plaintiffs allege an interest in the ownership and use of their physical premises, a right protected by the Fourteenth Amendment. SAC ¶¶ 192, 203; see, e.g., Ecotone Farm LLC v. Ward, 639 F. App'x 118, 125 (3d Cir. 2016); Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997).

To allege conscious-shocking behavior in a municipal decision impacting land use, a plaintiff must plead more than an "improper motive . . . even where the motive is unrelated to the merits of the underlying decision." Chainey, 523 F.3d at 220 (citation omitted).[7]   Rather, a pleading must allege "corruption, self-dealing, bias against an ethnic group" or similarly egregious behavior. Id.   While a single decision motivated by personal or political animus may be insufficient, Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin, 656 F. App'x 1, 7 (3d Cir. 2016), allegations depicting the "repeated abuse of government power with the deliberate aim of harming someone" elevate a pleading above this threshold. Ecotone Farm LLC, 639 F. App'x at 126.

Plaintiffs have stated such a claim.   They allege that Defendants engaged in a lengthy campaign of targeted harassment motivated by Dougherty's personal financial dealings (i.e., Plaintiffs' failure to acquiesce to Dougherty's demand for an investment), SAC ¶¶ 31-32, and Plaintiffs' participation in the above discussed activities protected by the First Amendment. See 8600 Landis, LLC v. City of Sea Isle City, No. 17-2234, 2018 WL 6522911, at *4 (D.N.J. Dec. 12, 2018) (observing that "allegations of hostility to [other] constitutionally-protected activit[ies]" are probative of conscious-shocking behavior) (citing Eichenlaub v. Twp. of Ind., 385 F.3d 274, 285 (3d Cir. 2004)).   Plaintiffs also allege that Dougherty intended to use the power of the Morristown government and his influence over other officials to limit Plaintiffs' chance of success, an intention which Defendants acted on through arbitrary police activity and licensing restrictions. SAC ¶¶ 33, 43, 83, 93, 125.   See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)

---

[7] Whether conduct shocks the conscience is a question of law for the court to decide.   Whittaker v. Cty. of Lawrence, 437 F. App'x 105, 108 (3d Cir. 2011) (citation omitted).   This threshold requirement prevents every violation of state law or local ordinance from being constitutionalized and preserves Fourteenth Amendment claims for truly egregious conduct.   See, e.g., 8600 Landis, LLC v. City of Sea Isle City, No. 17-2234, 2018 WL 6522911, at *2 (D.N.J. Dec. 12, 2018) (citing Whittaker, 437 F. App'x at 109).

("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.") (citation omitted). Taken as true, these collective allegations shock the conscious and state a viable Due Process claim.[8]

Counts 6 and 7 may proceed.

### 4.      Fourteenth Amendment — Equal Protection Clause (Counts 8-9)

Defendants next contend that Plaintiffs fail to state a "class of one" equal protection claim under the Fourteenth Amendment for both the alleged misuse of the MPD (Count 8) and adverse licensing decisions (Count 9). The Court again disagrees.

The government may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A plaintiff asserting a "class of one" claim must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Nance v. Nogan, No. 17-672, 2018 WL 2298357, at *7 (D.N.J. May 21, 2018) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)) (quotation marks omitted). "Similarly situated" means "alike 'in all relevant aspects.'" Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).

The SAC satisfies this standard. As to the police activity, the SAC alleges that no other Morristown business is subjected to similar targeted roadblocks or arbitrary bathroom inspections. SAC ¶¶ 218, 220. As to the licensing decisions, Plaintiffs allege that Morristown has not imposed similar restrictions on any other business, with reference to two neighboring bars that were permitted to expand their premises without restriction. Id. ¶¶ 52-53, 230. Plaintiffs further allege that there was no rational basis for either set of actions by Defendants. Id. ¶¶ 222, 232. At this

---

[8] Of course, this does not preclude Defendants from rearguing the issue on a full record following discovery.

stage of the litigation, this is sufficient to state an equal protection claim.[9]  Counts 8 and 9 may proceed.

### 5.      Municipal Liability of Morristown

Defendants argue that the SAC should be dismissed against Morristown because Plaintiffs have failed to properly allege a municipal custom, policy, or practice, as required by Monell v. Department of Social Services, 436 U.S. 658 (1978).  The Court disagrees.

For a plaintiff to state a Section 1983 claim against a municipality, he must allege that his injury is due to an act of the municipality itself: "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Wright v. City of Phila., 685 F. App'x 142, 146 (3d Cir. 2017) (quoting Monell, 436 U.S. at 694).  A plaintiff may meet this pleading burden in two ways: he may seek to recover based on an official act or ordinance of the city, Langford v. City of Atlantic City, 235 F.3d 845, 850 (3d Cir. 2000), or he may allege that he was injured "by city policy, by city custom, or by policymaking officials' deliberate indifference to constituents' constitutional rights."  Wright, 685 F. App'x at 146.

Here, each of Plaintiffs' constitutional claims challenge actions that may be attributed to Morristown.  First, the decisions concerning IB LLC's liquor licenses were official acts of the Town and the municipality is liable for them to the extent that they deprived Plaintiffs of their constitutional rights.  Langford, 235 F.3d at 850.[10]

---

[9] Defendants argue that the other bars identified by Plaintiffs are not similar "in all relevant aspects" and that the Town has imposed restricted hours for liquor sale on at least one other bar.  These factual arguments are premature on a Motion to Dismiss.

[10] Defendants curiously argue that Morristown cannot be liable for the licensing restrictions because one councilperson, nonparty Michelle Dupree Harris ("Harris"), testified before the ALJ that she was not in favor of the

16

As to the imposition of roadblocks and other police activity, Defendants argue that Dougherty did not have final policymaking authority to control the MPD under the Faulkner Act, N.J.S.A. § 40:69A-1, et seq., and Morristown's ordinances.  The Act grants the Mayor the power to "[s]upervise, direct and control all departments of the municipal government."  N.J.S.A. § 40:69A-40(c).  Defendants contend that notwithstanding the broad language of the Faulkner Act, Morristown ordinance delegates the day-to-day supervision of the MPD to the Director of Public Safety, rather than the Mayor.  See Certification of Richard D. Trenk Ex. B. at § 2-19.2(f)(1), ECF No. 50.4.  But even accepting Defendants' position that Dougherty was not directly empowered to control the MPD, the Town may still be held liable to the extent Dougherty exercised his authority as Mayor to persuade the Director of Public Safety or the MPD to act, which is what Plaintiffs allege occurred here.  See Carver v. Foerster, 102 F.3d 96, 101 (3d Cir. 1996) (citing Bartholomew v. Fischl, 782 F.2d 1148, 1153 (3d Cir. 1986)); see also Sims v. City of Orange, No. 12-2961, 2015 WL 1190170, at *7 (D.N.J. Mar. 13, 2015) (denying summary judgment on municipal liability claim where mayor allegedly ordered police director to initiate unlawful disciplinary action and then "deliberately influenced" the final resolution of that action).

Plaintiffs' surviving constitutional claims may proceed against Morristown.[11]

---

restrictions.  The ABC Board evidently imposed the restrictions notwithstanding Harris's objection; this fact consequently has no impact on the Monell analysis.

[11] For the same reason, the Court disagrees with Defendants' argument that Dougherty's lack of direct authority over the MPD or ABC Board shields him from personal liability.  See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005) (citation omitted) (holding that an individual is liable under Section 1983 if he "individually participated in the alleged constitutional violation or approved of it").  Dougherty may be held liable to the extent he directed or participated in the challenged conduct.  Indeed, if Dougherty's alleged orders were ultra vires under state or local law, this would strengthen, rather than weaken Plaintiffs' argument that Dougherty engaged in a campaign of harassment against them.

**B.      State Law Tort Claims**

Plaintiffs assert three state law tort claims: tortious interference with prospective economic relations (Counts 10-11), tortious interference with contractual relations (Count 12), and civil conspiracy (Count 13).   Defendants seek dismissal on grounds that each fails to state a claim.

**1.      Tortious Interference (Counts 10-12)**

To state a claim for tortious interference with either a prospective business relationship or an existing contract, a plaintiff must allege "(1) a protected interest—either a prospective economic or contractual relationship; (2) malice, i.e., intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the (prospective economic or contractual) gain; and (4) resulting damages." Kennedy v. Am. Airlines Inc., 195 F. Supp. 3d 646, 657 (D.N.J. 2016); see also Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751, (1989)).

Ordinarily, a plaintiff asserting tortious interference with a prospective contract must "identify at least a 'single, specific customer' that it lost or could have acquired." Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 358 (D.N.J. 2019) (quoting Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc., 332 F. App'x 787, 790 (3d Cir. 2009)). Alternatively, a plaintiff can satisfy his pleading burden by alleging "with some particularity the nature of economic benefit [it] was wrongfully denied, and that the defendant knew of that benefit." Aleynikov v. Goldman Sachs Grp., Inc., No. 12-5994, 2016 WL 6440122, at *17 n.20 (collecting cases) (D.N.J. Oct. 28, 2016).

Count 10 alleges that IB LLC had a reasonable expectation of contracting with patrons of Iron Bar and Revolution and that Defendants intentionally deterred such patrons through arbitrary police action, resulting in damages.  SAC ¶¶ 240-45.  Plaintiffs have not identified any specific

third parties who were deterred from patronizing IB LLC's establishments.  However, the SAC adequately pleads the nature of the economic benefit by alleging, inter alia, that the alleged roadblocks prevented handicapped individuals and ride-hailing services from accessing the bars. Id. ¶¶ 103-05.  The SAC also alleges Dougherty was aware of prospective transactions between IB LLC and its customers and acted intentionally to suppress them.  Id. ¶ 102.  This is sufficient to state a claim, and Count 10 may proceed.  See, e.g., Church v. Dwight Co., v. SPD Swiss Precision Diagnostics GmBH, No. 10-453, 2010 WL 5239238, at *4 (D.N.J. Dec. 16, 2010) (denying motion to dismiss where plaintiff alleged "ongoing and expected sales to the public at large").

Count 11 pleads that IB LLC had a reasonable expectation of contracting with future patrons of Gran Cantina, which Defendants intentionally subverted by causing the ABC Board to deny IB LLC's application to expand its liquor license.  SAC ¶¶ 246-51.  Here, the Court concludes that Plaintiffs' claimed prospective economic benefit is too speculative to state a claim for tortious interference.  Gran Cantina was never opened to the public and therefore lacked the "ongoing and expected sales" of Iron Bar and Revolution.  The SAC also fails to plead facts supporting a reasonable expectation of future liquor sales.  As observed above, the Town's power to regulate the sale of alcohol renders any expectation of such sales in a yet-to-be licensed establishment unreasonable.  Midnight Sessions, 945 F.2d at 678.  Plaintiffs also do not claim that the licensing decision prevented IB LLC from opening Gran Cantina and serving customers (albeit without alcohol sales).  Count 11 is accordingly dismissed without prejudice.

Count 12 asserts that Defendants' refusal to expand IB LLC's license also interfered with 11 SSH's lease for 11 South Street, Gran Cantina's proposed storefront.  Plaintiffs, however, fail to plausibly allege that Defendants' interference resulted in the loss of the lease, as required to

19

state a claim for interference with an existing contract.  See IDT Corp. v. Unlimited Recharge, Inc., No. 11-4992, 2012 WL 4050298, at *9 (D.N.J. Sept. 13, 2012).  Again, the ABC Board's licensing decision did not eliminate the value of 11 SSH's lease but merely removed one possible use of the rented property.  Without more, Plaintiffs' conclusory allegation that Defendants "caused [11 SSH] to terminate its lease" is insufficient.  SAC ¶ 257.  For example, Plaintiffs do not allege that 11 SSH's lease was contingent on IB LLC's acquisition of a liquor license.  Count 12 therefore fails to state a claim and is dismissed without prejudice.

### 2.     Common Law Civil Conspiracy (Counts 13)

A claim for civil conspiracy under New Jersey common law has four elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages."  Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003); see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005).  Special damages must be pled with specificity.  Fed. R. Civ. P. 9(g).

The SAC alleges that Dougherty and Armington agreed to work to diminish Plaintiffs' business by interfering with IB LLC's liquor license, motivated by their mutual animus of Cavanaugh.[12]  SAC ¶¶ 33-34, 36-37, 264.  It further alleges that Dougherty and Armington sought to achieve this purpose through "unlawful means" in the form of the unconstitutional conduct discussed above.  Finally, Plaintiffs have satisfied their burden under Rule 9(g) by specifically pleading ten distinct categories of damages flowing from the conspiracy, including lost profits from Iron Bar, Revolution, and Gran Cantina; additional expended resources in combatting the

---

[12] The SAC does not allege Armington's involvement in the alleged misuse of the MPD.

licensing restrictions and obtaining financing; and the diminished value of the LLCs.  SAC ¶ 269; see, e.g., John Wiley & Sons, Inc. v. Rivadeneyra, 179 F. Supp. 3d 407, 412 (D.N.J. 2016) (finding allegations of "lost profits" sufficient to plead special damages from a civil conspiracy).  Count 13 may proceed at this stage.

### C.    Legislative Immunity

Defendants finally argue that Plaintiffs' claims arising out of actions taken by Armington must be dismissed based on legislative immunity.  The Court disagrees.

Town councilmen are absolutely immune from Section 1983 liability for acts taken as legislators.  Abraham v. Pekarski, 728 F.2d 167, 174-75 (3d Cir. 1984).   Immunity only attaches to acts consisting of policymaking of a general purpose, involving line drawing ("substantively legislative") and only if the act follows the established legislative procedures of the town ("procedurally legislative").  Baraka v. McGreevey, 481 F.3d 187, 198 (3d Cir. 2007).  Generally, "where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration."  Id. (citation and quotation marks omitted).  The denial of a liquor license involves an "individualized decision[ ] based on specific facts" and is "an administrative act."  See Dansby v. Borough of Paulsboro, No. 92-4558, 1995 WL 352995, at *11 (D.N.J. June 7, 1995), aff'd, 79 F.3d 1137 (3d Cir. 1996) (citations omitted).

Here, Plaintiffs do not seek to hold Armington liable for any vote on a town ordinance,[13] but rather are seeking to hold him liable for his actions in imposing restrictions on IB LLC's liquor license.  These acts were administrative in character, rather than legislative actions.  The Motion is denied to the extent it asserts legislative immunity.

---

[13] The SAC does allege that the Town targeted IB LLC through an ordinance on February 28, 2017 that recast Iron Bar and Revolution as "nightclubs" subject to more demanding restrictions.  Id. ¶¶ 116-19.  Plaintiffs concede these allegations were pled only as "background fact" and do not form the basis for any cause of action.  Pl. Opp. at 12.

**V.**   **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss, ECF No. 50, is **GRANTED in part** and **DENIED in part**.  Count 5 is **DISMISSED WITH PREJDUICE**.  Counts 11-12 are **DISMISSED WITHOUT PREJUDICE**. The Motion is otherwise **DENIED**.  To the extent Plaintiffs can cure the deficiencies identified in this Opinion, they may file an amended pleading within thirty (30) days.  An appropriate order follows.

Date: February 3, 2021                    **/s/ _Madeline Cox Arleo_**
                                          **Hon. Madeline Cox Arleo**
                                          **UNITED STATES DISTRICT JUDGE**